SHAHOOD, J.
We reverse the revocation of appellant’s community control and direct that the same be reinstated. We hold that the trial court abused its discretion in revoking appellant’s community control on the grounds that she violated the condition that she “remain confined to her approved residence except one half hour before and after [her] approved employment.”
At the VOP hearing, appellant’s community control officer testified that on March 15, 1999, he instructed appellant as to the conditions of her community control and, in particular, that as one of her conditions, she was to remain confined to her residence. He further provided appellant with daily schedules as to which activities she could engage in where she could leave her residence.
On August 10, 1999, at approximately 9:02 p.m., the community control officer stopped by appellant’s residence and found appellant out in her yard. The community control officer stated that she was in the rear, “right off the apartment area.” Appellant advised the officer that the reason she was not inside her home was because it was hot. The officer advised her that she needed to remain confined to her residence. He did not stay to see whether she returned to her residence because he was quite sure she would comply with his instruction.
The community control officer testified that his interpretation of the condition “you will remain confined to your residence except one half hour before and after your approved employment,” meant confinement inside the residence.
At the time of the incident, appellant’s highest level of education was through the ninth grade and she was currently a patient at the Henderson Mental Health Clinic. According to her psychiatrist at the clinic, appellant was prescribed medication as part of her treatment.
Appellant testified that she was standing inside the chain link fence of her residence which was located about four feet from her front door. She stated that she did not understand what confinement meant. Appellant explained that when her community control officer explained the conditions of her community control, he told her that she could stand outside her front door as long as she was in front of her house. She stated that she went outside because the air conditioner was not working at the time. According to appellant, she was pregnant at the time and ultimately gave birth in prison.
In finding appellant in willful and substantial violation of the condition of her community control, the court stated: “Confined to residence doesn’t mean running around the yard. We have to analogize this to the Broward County Jail. If one leaves his or her jail cell, that’s a jailbreak, although I think based upon her circumstances here, maybe we should take that into consideration.” Based upon the circumstances of her case, the court adjudicated appellant guilty and sentenced appellant to 39.9 months, the bottom of her recommended guidelines sentence.
Probation may be revoked only upon a showing that the probationer deliberately and willfully violated one or more conditions of probation. See Steiner v. State, 604 So.2d 1265, 1267 (Fla. 4th DCA 1992). A violation which triggers a revoca *526 tion of probation must be both willful and substantial. See id. The state has the burden of proving by the greater weight of the evidence that the violation was willful and substantial. See id. Appellate courts should reverse a revocation of probation only if it is shown that the trial court abused its discretion. See Bernhardt v. State, 288 So.2d 490 (Fla.1974).
Absence from home without permission supports a finding of a willful and substantial violation of community control. See Lopez v. State, 722 So.2d 936, 937 (Fla. 4th DCA 1998). Whether appellant should be excused for leaving is a matter within the trial court’s sound discretion. See id.
Based on the facts of this case, we conclude that the trial court abused its discretion in revoking appellant’s community control. The evidence was insufficient to demonstrate a willful violation. Although the community control officer stated that he explained the conditions of community control to appellant, appellant testified that she did not understand what confinement meant and was allegedly told that she could stand outside her front door.
It is certainly reasonable to conclude that appellant, having a limited education, pregnant, and with no air conditioning, believed she was not violating her condition of community control by stepping outside and remaining on the premises of her residence. The community control officer did not seem too worried by appellant’s noncompliance as evidenced by the fact that he didn’t even remain to confirm that she complied with his direction that she go inside and remain in her residence. This is not, as characterized by the court, a situation where appellant was running around her yard. This was not “a jailbreak.” Moreover, this was not a situation where appellant lied about her whereabouts or was previously admonished. Compare Lopez v. State, 722 So.2d 936 (Fla. 4th DCA 1998); Allen v. State, 666 So.2d 259 (Fla. 4th DCA 1996). In fact, appellant was in clear view of the community control officer and went back into the house immediately after being told that her presence outside the residence was unauthorized.
REVERSE AND REINSTATE COMMUNITY CONTROL.
WARNER, C.J., and HAZOURI, J., concur.